## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

CARMEN BORRÁS-MARIN                  *
                                     *
          Plaintiff                  *
                                     *          **Civil No. 97-1863(SEC)**
          v.                         *
                                     *
SEDGWICK JAMES OF PUERTO RICO,       *
INC.                                 *
                                     *
          Defendant                  *
*************************************



### OPINION AND ORDER

Before the Court in the above-captioned case is a motion for summary judgment filed by co-defendant Sedgwick James of Puerto Rico, Inc. ("Sedgwick"). **(Docket #29).**[1] For the reasons stated below, Sedgwick's motion for summary judgment is **GRANTED**.

**I.     Procedural and Material Facts**

On June 5, 1997, Ms. Carmen Borrás-Marín, (hereinafter "Borrás"), filed the complaint of caption seeking declaratory and injunctive relief, back pay, damages, and other relief pursuant to the Americans with Disabilities Act, (ADA), 42 U.S.C.A. § 12111, 12112(a); Section 1981 of Title 42 U.S.C.A; Puerto Rico Law No. 105 of December 20, 1991, 21 P.R.Laws Ann. § 501; and Article 1802 of the P.R. Civil Code, 31 P.R. Laws Ann. § 5196.

Plaintiff alleged that while she was employed by Sedgwick, she was diagnosed with demyelinating disease. This is a nerve disease that affects Plaintiff's ability to walk. The most common form of this disease is known as multiple sclerosis. However, Plaintiff alleged that in spite of her condition, she was still qualified to work and that her doctors recommended she go to therapy.

---

[1] Also before the Court is Plaintiff's opposition. **(Docket #34).**

(Docket #1, Complaint ¶¶ 6-9). Finally, Plaintiff alleged that after she was diagnosed with the disease, she was pressured to resign and that she was ultimately fired because of it. (Docket #1, Complaint ¶¶ 10-13).

After several meetings to cooperate with discovery, on September 9, 1998, Sedgwick filed for summary judgment alleging that the Court lacked personal jurisdiction over co-defendants and that Plaintiff failed to state a claim upon which relief could be granted. (Docket #15). This motion was later supplemented on July 8, 1999. (Docket #29). This later motion alleged that Plaintiff's discharge was not predicated upon her disability, but rather on the inadequate performance of her job obligations. (Docket #29, Defendant's amended motion ¶ 3). In addition, Sedgwick argued that Plaintiff did not establish a *prima facie* case of job discrimination, because allegedly Plaintiff could not prove that she was qualified to perform the essential functions of her job with or without reasonable accommodation. (Docket #29 Defendant's memorandum of law at p. 4). Finally, Sedgwick alleged that it had a non-discriminatory reason for dismissing Borrás and that therefore, summary judgment is warranted. (Docket #29 Defendant's memorandum of law at p. 4).

Plaintiff opposed Defendant's motion on September 9, 1999. (Docket #34). Plaintiff re-alleged therein that her dismissal was motivated by her medical condition and stated that Sedgwick intended to avoid the long term disability payment it was required to pay pursuant to the Company's self-insured disability plan. (Docket #34, Plaintiff's memorandum of law, at p. 2). In addition, Plaintiff alleged that the circumstances leading to her discharge indicate that there were discriminatory reasons behind it. (Docket #34, Plaintiff's memorandum of law, at p. 3).

Civil No. 97-1863(SEC)                                                                          3

## II.    Summary Judgment Standard

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim... is asserted... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that **there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.**" Fed.R.Civ.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28 (1st Cir. 1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2725, p.401.

In this regard, the First Circuit Court of Appeals has noted that **for a dispute to be "genuine", there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party.** U.S. v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992); See also Boston Athletic Assn. v. Sullivan, 867 F.2d 22, 24 (1st Cir. 1989); Medina Muñoz v. R.J. Reynolds Tobacco, 896 F.2d 5, 8 (1st Cir. 1990) ("A 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, **"material" means that the fact is one that might affect the outcome of the suit under the governing law.** Morris v. Government Development Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, supra, § 2725 at p. 419. "Not every genuine

Civil No. 97-1863(SEC)                                                                4

factual conflict necessitates a trial.  It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." Martínez v. Colón, 54 F.3d 980, 983-984 (1st Cir. 1995).

When determining whether to grant summary judgment, the Court may not weigh the evidence. Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668 (1st Cir. 1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." Id. (citing Greensburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d 932, 936 (1st Cir. 1987).  Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. Casas Office Machines, 42 F.3d at 684.

**While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case"**, Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1984); **the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions.**" Lawton v. State Mutual Life Assurance Company of America, 101 F.3d 218, 223 (1st Cir. 1996).  That is, "the nonmovant must produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue... Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina Muñoz, 896 F.2d at 8, quoting Mack v. Great Atlantic and Pacific Tea Co., 871 F.2d 179, 181 (1st Cir. 1989) ("The evidence illustrating the factual controversy cannot be conjectural or problematic;

it must have substance in the sense that it limns differing versions of the truth which a factfinder

must resolve.")

       In this case, the uncontroverted material facts show that Borrás was an employee of Sedgwick

from February 15, 1987, to March 1st, 1996, date on which she was dismissed from work. Employer

Sedgwick was a company engaged in the business of insurance brokerage until December 31, 1997.

On February 5, 1987, Plaintiff started to work at Sedgwick as an Assistant Vice-President reporting

directly to Mr. Eduardo Chevres, President of the company. Among her duties were the supervision

of account executives and coordinators, and the marketing and servicing of accounts.

       By 1991, Borrás had attained the position of Vice President of the company and Executive

Office Manager. In that position, Plaintiff was responsible for the overall supervision of all

administrative office matters, marketing and servicing commercial accounts, and of obtaining and

maintaining clients in order to generate commissions for the company. Accordingly, Plaintiff

received a salary increase based on her production goals and the additional management

responsibilities she assumed. (Docket #34, Plaintiff's exhibit #3; Docket #29, Defendant's exhibit

A-1).

       However, on or about October, 1991, Borrás was diagnosed with a nerve disease called

Demyelinating Disease, the most common form of which is multiple sclerosis. This nerve disease

impaired plaintiff's ability to walk and required therapy. Plaintiff verbally notified her supervisor

and Sedgwick's President, Mr. Eduardo Chevres, of her disease, and she requested leave to attend

therapy in the morning as a reasonable accommodation. However, she never made a written request

in that regard. (Docket #29, Defendant's exhibits A ¶ 9-10 and C). Her medical condition was later

verified and confirmed by Sedgwick in 1994, through a medical examination performed by Dr.

Renato Santori, a neurologist, at Sedgwick's request. (Docket #34, Plaintiff's exhibits #10-11.) No formal requests for a reasonable accommodation were made at that time either.

## III.    Employment Discrimination Applicable Law

Plaintiff bears the initial burden of proof to establish a *prima facie* case of unlawful discrimination in the work environment. McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802 (1973). The United States Supreme Court in McDonnell Douglas, supra, established that plaintiffs may use circumstantial evidence to prove the existence of a discriminatory animus from an employer, provided that a *prima facie* case of discrimination is first established. McDonnell Douglas Corp., 411 U.S. 802-803; Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 25 (1st Cir. 1997).

Once a prima *facie case* is established, the burden of proof then changes to the employer to assert a non-discriminatory, valid reason for the allegedly discriminatory action. McDonnell Douglas Corp, 411 U.S. 802-803; Serrano-Cruz, 109 F.3d at 25 (Once plaintiff has carried its burden of establishing a *prima facie* case "a presumption of discrimination arises that shifts the onus to the employer to come forward with a legitimate, non discriminatory reason for its actions.") However, the employer's burden is "merely one of production; the burden of persuasion remains plaintiff's at all times." Lawrence v. Northrop Corp., 980 F.2d 66, 69 (1st Cir. 1992); Serrano-Cruz, 109 F.3d at 25-26 (Stating that once the employer provides a legitimate non-discriminatory reason for dismissing the employee, "the burden shifts back to the plaintiff to show that the employer's justification is pretextual."); St. Mary's Honor Center v. Hicks, 509 U.S. 502,, 515 (1993).

The McDonnell Douglas *prima facie* case requires plaintiffs to show: (1) that they are a member of the protected class; (2) that they are qualified for the job; (3) that despite their

qualification, they were rejected or dismissed; and (3) that after said rejection or dismissal, the position remained open and the employer continued to seek applicants. McDonnell Douglas Corp, 411 U.S. at 803.

### A.    Whether Plaintiff Belongs to the Protected Class — Americans with Disabilities Act

The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. §§ 12101, et. seq., is a federal law "intended to extend the basic duties and privileges of the Rehabilitation Act of 1973 to all except the smallest employers, to all state and local entities, and to most private sector establishments serving the public." Henry H. Perritt, Jr., Americans with Disabilities Act Handbook § 1.2 (3rd ed. 1997). Its Title I regulates the employment in general of disabled persons. It is, in the words of Henry H. Perritt, Jr.: "the most significant labor and employment legislation in a decade,"Id. § 1.1.

To prove that an employer violated Title I of ADA, the plaintiff must prove: (1) that she is a "qualified individual;"(2) with a "disability;" and (3) that she was excluded from the position sought "because of the disability" Id. § 3.2 (emphasis supplied); See 42 U.S.C.A. 12112(a); Quint v. A.E. Staley Manufacturing Co., 172 F.3d 1, n.3 (1st Cir. 1999) quoting Criado v. IBM Corp., 145 F.3d 437, 441 (1st Cir. 1998). "Qualified Individual with a Disability" is: "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8).

In this case it is uncontroverted that Borrás suffers from Demyelinating Disease, a degenerative and progressive nerve disease, and that her condition is both permanent and substantially limits at least one of her major life activities. However, Defendant contests the issue

of whether or not Plaintiff is a "qualified" disabled individual under ADA, in the sense that she can

perform the essential functions of her job, with or without reasonable accommodation. In addition,

Defendant raises the issue of whether or not Borrás was dismissed from her job "because of her

disability." Accordingly, the Court will analyze each of these elements of the claim separately.

### B.    Whether Plaintiff Is a "Qualified Individual" under ADA

The Equal Employment Opportunity Commission ("EEOC") defined the concept "qualified

individual with a disability" as: "an individual with a disability who satisfies the requisite skill,

experience, education and other job-related requirements of the employment position such individual

holds or desires, and who, with or without reasonable accommodation, can perform the essential

functions of such position." 29 C.F.R. § 1630.2(m).

According to this definition, "**[t]he determination of whether an individual with a**

**disability is 'qualified' should be made in two steps. The first step is to determine if the**

**individual satisfies the prerequisites for the position**, such as possessing the appropriate

educational background, employment experience, skills, licenses, etc." 29 C.F.R. Pt. 1630 App. §

1630.2(m). "**The second step is to determine whether or not the individual can perform the**

**essential functions of the position held or desired, with or without reasonable accommodation.**"

29 C.F.R. Pt. 1630 App. § 1630.2(m).

In regards to the first step of this inquiry, it is uncontroverted that Borrás satisfied the

prerequisites for the position she held at Sedgwick. However, Sedgwick argues that Borrás did not

satisfy the second step of the "qualification" inquiry. That is, Sedgwick alleges that Borrás was

unable to perform the "essential functions" of her job, with or without reasonable accommodation.

Sedgwick bases its argument on the uncontroverted fact that Plaintiff never satisfied the production goals for her position. In fact, her production during the last three years in the company was "poor", in comparison to her established goals. (Docket #29, Defendant's exhibit B-1; Docket #34, Plaintiff's exhibits #3 and 14).[2]

In this regard, we should keep in mind that: **"The determination of whether an individual with a disability is qualified is to be made at the time of the employment decision.** This determination should be based on the capabilities of the individual with a disability at the time of the employment decision, and should not be based on speculation that the employee may become unable in the future or may cause increased health insurance premiums or workers compensation costs." 29 C.F.R. Pt. 1630 App. § 1630.2(m). In addition, **"[t]he inquiry into whether a particular function is essential initially focuses on whether the employer actually requires employees in the position to perform the functions that the employer asserts are essential."** 29 C.F.R. Pt. 1630 App. § 1630.2(n).

The EEOC defines an essential job function as those "fundamental job duties of the employment position", with the exclusion of all "the marginal functions of the position". 29 C.F.R. § 1630.2(n)(1).

---

[2]    Plaintiff's production goal was of $141,383.00 annually, in terms of the commissions received from the clients she brought to the company and those assigned to her for account servicing purposes. However, Plaintiff never met that goal. Her actual production was:

| | | |
|---|---|---|
| 1991 | — | $124,303.70 |
| 1992 | — | $134,820.90 |
| 1993 | — | $ 83,027.24 |
| 1994 | — | $ 96,984.99 |
| 1995 | — | $ 72,429.09 |

(Docket #29, Defendant's exhibit B). Accordingly, in 1994 her annual compensation was adjusted to reflect her low production. (Docket #34, Plaintiff's exhibit 14).

In determining which functions are essential, the EEOC has provided that any of several

reasons may be considered, including the following:

> (i)     The function may be essential because the reason the position exists is to perform that function;
>
> (ii)    The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
>
> (iii)   The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

29 C.F.R. § 1630.2(n)(2).

To prove that any given function is an essential function of the position, the parties may use:

> (i)     The employer's judgment as to which functions are essential;
>
> (ii)    Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii)   The amount of time spent on the job performing the function;
>
> (iv)   The consequences of not requiring the incumbent to perform the function;
>
> (v)    The terms of a collective bargaining agreement;
>
> (vi)   The work experience of past incumbents in the job; and/or
>
> (vii)  The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

In this case neither party provided the Court with sufficient information and proof related to

whether or not Plaintiff was complying with the essential functions of her job.  Apparently,

Defendant's only complaint in that regard was that Plaintiff was not meeting her production goals.

However, Sedgwick did not argue that the production goal was an essential job function.  In fact, no

evidence was provided to establish what where the essential functions of Plaintiff's position.

Therefore, in these circumstances, it is speculative for the Court to consider whether that alone

disqualified Plaintiff from the protections of ADA.  Accordingly the Court concludes, for the sake

of argument, that at the time of her discharge, Plaintiff was a qualified disabled individual under

ADA.

**C.        Whether Plaintiff Was Discharged Because of her Disability**

Defendant's strongest argument however, centers around the question of whether or not

Plaintiff was discharged from her position "because of her disability."  In this regard, going back to

the McDonnell Douglas test, the Court notes that the defendant only has to produce a legitimate non-

discriminatory reason for the discharge because "the burden of persuasion remains plaintiff's at all

times." Lawrence v. Northrop Corp., 980 F.2d 66, 69 (1st Cir. 1992).

In order to rebut the employer's proffered reason for the discharge, **the employee "must

demonstrate that the proffered reason for the adverse employment action was simply a pretext

for ... discrimination."** Goldman v. first Nat'l Bank of Boston, 985 F.2d 1113, 1117 (1st Cir. 1993),

quoted by Ruiz v. Posadas de San Juan Associates, 124 F.3d 243, 248 (1st Cir. 1997).  **This in turn

requires the employee to "proffer enough evidence to support two findings: 1) the employer's

proffered reason was pretextual; and, 2) its true motive was... discrimination."** Ruiz v. Posadas

de San Juan Associates, 124 F.3d at 248, citing Udo v. Tomes, 54 F.3d 9, 12-13 (1st Cir. 1995).

In this case, Sedgwick alleged that it dismissed Plaintiff because: (1) she was not meeting

her production goals; (2) she had a history of lateness and unexcused absences; and (3) she

mishandled one of her clients accounts.  Sedgwick provided evidence of all three allegations.  The

first allegation is not disputed.  The second one is undisputed in the sense that Plaintiff admits that

she often took time off in the mornings to go to therapy.  In addition, it is uncontroverted that

Plaintiff verbally informed Mr. Chevres that she needed time off for therapy.  However, it is also

uncontradicted that she never produced any formal documentation in that regard, and that she never made a formal request to Sedgwick for any accommodation. In a sworn affidavit, Chevres indicated that Sedgwick was willing to accommodate Plaintiff's medical needs, but that the company needed evidence of the doctor-recommended reasonable accommodations that Borrás required. (Docket #29, Defendant's exhibit A ¶¶ 10-12). Plaintiff never provided such evidence.

In addition, there is evidence of Mr. Chevres' warnings addressed to Plaintiff regarding the consequences of her lateness and irregular attendance record. (Docket #29, Defendant's exhibits A3-A4). However, Borrás failed to object or act in any other way in response to the warnings received. Rather, she let them stand unopposed in her personnel file. Finally, Sedgwick provided evidence of Borras' mistakes in handling one of her accounts. (Docket #29, Defendant's exhibit A).

In this regard, Plaintiff's opposition to Sedgwick's motion to dismiss is weak, because Plaintiff did not rebut Defendant's proffered legitimate reasons for her discharge. In that sense, Borrás failed to satisfy the <u>McDonnell Douglas</u> test. In fact, if anything, the record shows that Plaintiff chose to stand idle in the face of her employer's warnings regarding her lateness and irregular attendance record. In addition, Plaintiff did not contradict Sedgwick's record of her mistakes in handling one of her accounts. Finally, Plaintiff admitted that her production was below target and that during her last three years of work at Sedgwick, it was poor. Therefore, the Court finds that Sedgwick had a legitimate non-discriminatory reason for dismissing Borrás. On that basis, Plaintiff's claims in the complaint at bar must fail and Defendant's motion for summary judgment, **(Docket #29)**, is **GRANTED**. The Court will proceed to enter judgment accordingly.

**SO ORDERED.**

Civil No. 97-1863(SEC)                                                                13

In San Juan, Puerto Rico, this *10* ᵀᴴ day of  May, 2000.

SALVADOR E. CASELLAS
United States District Judge